UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL ATHLETIC TRAINERS' ASSOCIATION, INC., a Texas Non-Profit Corporation, | ) ) ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | 3:05-CV-1098-G |
| VS. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, the National Athletic Trainers'
Association ("NATA"), to alter or amend the court's July 21, 2005, memorandum
opinion and order and final judgment. For the reasons discussed below, NATA's
motion is denied.

## I.  BACKGROUND

NATA initiated this action on May 27, 2005, seeking injunctive and
declaratory relief in connection with the implementation of new regulations
promulgated by the defendants United States Department of Health and Human

Services ("H.H.S."), Michael O. Leavitt, Secretary, H.H.S. (the "Secretary"), and

Mark McClellan, MD, Administrator, Centers for Medicare and Medicaid Services

("CMS") (collectively, the "defendants").  *See generally* Plaintiff's Application for

Temporary Restraining Order, Request for Preliminary and Permanent Injunctive

Relief, and Complaint for Declaratory Judgment ("Complaint").  On June 3, 2005,

this court entered an order, incorporating an agreement of the parties, staying

implementation of the revised Medicare regulations at issue (the "New Rules") until

such time as the court could issue a ruling on NATA's request for preliminary

injunctive relief or July 22, 2005, whichever first occurred.  Order, filed June 3, 2005,

at 2-3.

On June 23, 2005, the defendants filed a motion to dismiss NATA's complaint

for lack of subject matter jurisdiction.  On July 21, 2005, this court granted the

defendants' motion to dismiss and entered a judgment of dismissal.  Memorandum

Opinion and Order, filed July 21, 2005; Judgment, filed July 21, 2005.  In making its

determination, the court found that it lacked subject matter jurisdiction over NATA's

complaint because administrative remedies were available to physicians who had an

incentive to challenge the New Rules, and those remedies had not yet been

exhausted.  Memorandum Opinion and Order, filed July 21, 2005, at 20-27.

The New Rules were implemented on July 25, 2005.  Defendants' Response in Opposition to Plaintiff's Emergency Motion for Injunctive Relief and Request for Evidentiary Hearing ("Response") at 2, n.2.

On July 29, 2005, NATA filed the instant motion to alter or amend the court's July 21, 2005, memorandum opinion and final judgment.  At the same time, NATA filed a motion seeking an injunction prohibiting the Secretary from continuing the enforce the New Rules.  *See generally* Plaintiff's Brief in Support of Plaintiff's Emergency Motion for Injunctive Relief Pending Resolution of Plaintiff's Emergency Motion to Alter or Amend the Court's July 21, 2005 Memorandum Opinion and Order and Final Judgment, and Request for Evidentiary Hearing.  The court, citing its lack of jurisdiction over the matter, denied NATA's request for injunctive relief.  Memorandum Opinion and Order, filed August 11, 2005.

## II. <u>ANALYSIS</u>

"A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued."  *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal quotations omitted).  "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law."  *Id*.  Some courts have found that a motion to alter or amend may also be granted if

granting the motion is necessary to prevent manifest injustice.  *Fresh America Corporation v. Wal-Mart Stores, Inc.*, No. 3:03-CV-1299-M, 2005 WL 1253775 at *1 (N.D. Tex. May 25, 2005) (Lynn, J.).

NATA asserts three grounds for reconsideration:  (1) that it did not have a fair opportunity to respond to evidence improperly submitted for the first time in the defendants' reply brief; (2) that the court's failure to consider all of the plaintiff's evidence concerning whether physicians have an incentive to appeal the implementation of the new rules resulted in manifest injustice; and (3) that the CMS modifiers do not allow physicians to appeal the new rule or preclude physicians from facing penalties for challenging the rule.  *See generally* Plaintiff's Brief in Support of its Emergency Motion to Alter or Amend the Court's July 21, 2005 Memorandum Opinion and Order and Final Judgment, and Request for Evidentiary Hearing ("Rule 59(e) Motion").

A.  <u>Fair Opportunity to Respond to Evidence Submitted for the First Time with the Defendants' Reply</u>

NATA argues that it was "effectively precluded from . . . responding to [the evidence cited in the defendants' reply brief regarding the applicability of the CMS modifiers]," because the court's ruling was entered just six days after the defendants filed their reply brief.  Rule 59(e) Motion at 4.  NATA argues that "a district court may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an opportunity to respond."  *Id*. (citing *Vais*

*Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004)).  The court agrees with this proposition.

In response, the defendants argue that NATA "should have objected, moved to strike, and at the very least asked for the opportunity to respond [to the CMS modifier evidence] at the time [the reply was filed]."  Defendants' Response in Opposition to Plaintiff's Emergency Motion for Reconsideration ("Response to Rule 59(e) Motion") at 5.  The defendants maintain that, by failing to take any action prior to the court's ruling, NATA waived its opportunity to respond to the CMS modifier argument.  *Id.*

Given the short time span between the filing of the defendants' reply and the court's issuance of its memorandum opinion and order, it would be quite harsh to find that NATA waived any right to respond to the CMS modifier evidence.  Accordingly, the court will consider NATA's arguments and evidence regarding the modifiers submitted with the instant motion.  *See infra* Part II. C.

B.  Court's Failure to Consider All of NATA's Evidence Concerning Physicians' Incentive to File Administrative Appeals

In its motion, NATA also asserts that "the Court ignored [NATA]'s uncontroverted evidence demonstrating that if the New Rule[s] [were] implemented . . ., physicians would have no incentive to challenge the New Rule[s] through the administrative process."  Rule 59(e) Motion at 11.  Specifically, NATA argues that physicians would have no incentive to go through an administrative appeal because of

potential economic loss arising from maintaining athletic trainers, and other non-therapist personnel, on their staffs. *Id*. NATA directs the court to the declaration of Dr. Jeffrey Mark Rose, which was included in its appendix to its response to the defendants' motion to dismiss. Declaration of Dr. Jeffrey Mark Rose (the "Rose Declaration"), Exhibit B to Appendix to Plaintiff's Response to Defendants' Motion to Dismiss, at 49-53. In his declaration, Rose states that "as a D.O., due to overhead costs and legal fees, I have no incentive to provide 'incident to' therapy services to my patients by using athletic trainers . . . in order to challenge the New Rule[s]." *Id*. at 51. Rose continued, "[e]ven if I were to submit such a claim for reimbursement and it is denied, I must pay my auxiliary personnel's salary and the overhead costs associated with them." *Id*. at 51-52. NATA contends that the court ignored this evidence, with the consequence that "the Court's finding was a manifest error of fact and law and result[ed] in manifest injustice to NATA's members." Rule 59(e) Motion at 11.

The defendants respond that this claim merely repeats arguments that were already made, or which could have been made, and thus is not proper in a Rule 59(e) motion. Response to Rule 59(e) Motion at 4. The court agrees. In its response to the defendants' motion to dismiss, NATA argued that physicians have no incentive to administratively appeal the denial of reimbursement for "incident to" services provided by athletic trainers. Plaintiff's Response to Defendants' Motion to Dismiss

at 14-16.  In that response, NATA referred to the Rose declaration, but its sole

argument in that connection was that physicians would face draconian criminal

and/or civil penalties if they were to submit claims for reimbursement for "incident

to" services provided by athletic trainers.  *Id.*  NATA summarized this argument by

asserting, "[s]imply, a physician will not risk potential criminal and civil penalties in

order to seek an administrative determination of whether athletic trainers should be

permitted to provide incident to therapy services."  *Id*. at 15 (citing the Rose

Declaration, Appendix to Plaintiff's Response to Defendants' Motion to Dismiss at

51-53, and the Declaration of Joel M. Press, M.D., Exhibit D to Appendix to

Plaintiff's Response to Defendants' Motion to Dismiss, at 57-59 (which cites several

federal criminal statutes relating to fraud)).

  In its response to the defendants' motion to dismiss, NATA did not raise any

argument regarding the economic feasibility -- other than the risk of monetary

sanctions -- of maintaining athletic trainers as auxiliary personnel for the purposes of

providing "incident to" therapy services.  While evidence was submitted which

touched on this issue, namely the Rose declaration, that evidence was not used to

support an argument regarding the costs of maintaining athletic trainers on staff.  The

evidence was cited solely for the proposition that physicians may be subject to

sanctions if they submit claims for "incident to" therapy services provided by athletic

trainers.  Plaintiff's Response to Defendants' Motion to Dismiss at 14-16.  It is not

the court's task to comb through the record to find evidence which may support an argument not raised by a party.  See *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).  Although evidence may exist which favors a party, the party must direct the court to such evidence and proffer an argument which informs the court of the reasons why that evidence supports the argument.  See *Smith*, 391 F.3d at 625; *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

The court did not ignore evidence in the record.  Although the court sought to accommodate the parties by issuing a ruling within a narrow time window, it gave every consideration to the arguments raised by the parties regarding the motion to dismiss, and the evidence which supported those arguments.  NATA's sole argument in support of its proposition that physicians lacked incentive to file administrative appeals focused on potential sanctions to which physicians might be subject.  Plaintiff's Response to Defendants' Motion to Dismiss at 14-16.  NATA's present argument -- regarding the economic feasability of continuing to employ athletic trainers -- was not before the court during the pendency of the motion to dismiss.  The court did not "ignore" the evidence, and there was thus no manifest error of fact or law.

## C.  Effect of the CMS Modifiers

In its response to the defendants motion to dismiss, NATA argued that physicians lacked an incentive to administratively appeal a denial of medicare claims for "incident to" therapy services provided by athletic trainers because of potential criminal and civil penalties.  Plaintiff's Response to Defendants' Motion to Dismiss at 14-16.  In reply, the defendants urged that physicians would not be subjected to civil or criminal penalties because they would be required to submit the claims with the CMS modifier "GY", which indicates that the provider knows that the service provided is not covered by Medicare, and that the claim will likely be denied. Defendants' Reply in Support of the Motion to Dismiss Plaintiff's Application and Complaint for Injunctive and Other Relief ("Defendants' Reply to Response to Motion to Dismiss") at 7-8.  The use of the modifier, the defendants argued, removes the intent element from the potential criminal and civil sanctions cited by NATA because the provider is expressly stating that he or she knows the service is not covered.  Response to Rule 59(e) Motion at 8.  Thus, the use of the CMS modifier precludes a determination that the provider has submitted a false claim.  *Id*.

In the instant Rule 59(e) motion, NATA argues that the CMS modifiers do not allow physicians to administratively appeal the New Rules, nor do they preclude physicians from facing penalties for challenging the New Rules.  Rule 59(e) Motion at 6-10.  According to NATA, "if a physician did use a modifier to seek denial of

coverage for 'incident to' therapy services, he or she would be unable to seek administrative review of the ensuing claim determination." *Id*. at 6.  NATA further argues that the modifiers identified by the defendants "do nothing to eliminate the potential civil and criminal penalties faced by would-be challengers of the New Rule[s]." *Id*.  The court finds that the latter argument is without merit and agrees with the defendants.

The "GY" modifier is to be used when a provider believes that a claim will be denied because it is not a Medicare benefit or because it is statutorily excluded from Medicare.  CMS Provided Chart for When to Use the "GY" Modifier ("CMS 'GY' Chart"), Exhibit A-3 to Appendix to Plaintiff's Brief in Support of Its Emergency Motion to Alter or Amend the Court's July 21, 2005 Memorandum Opinion and Order and Final Judgment, and Request for Evidentiary Hearing.  A provider using the "GY" modifier, in conformity with Medicare regulations, to indicate that he or she believes that a claim will be denied cannot have an intent to defraud. Accordingly, if the "GY" modifier is used to designate the "incident to" therapy services at issue in this case, NATA's argument that physicians lack incentive to administratively appeal denial of claims due to potential criminal and civil penalties is unpersuasive.

NATA argues that the "GY" modifier is inapplicable to "incident to" therapy service.  Rule 59(e) Motion at 8.  In support of its position, NATA asserts that the

- 10 -

"GY" modifier is applicable only to statutorily excluded Current Procedural

Terminology ("CPT") codes, and CPT codes for physical therapy services are not

statutorily excluded. *Id.* at 8-9. The defendants respond that the statute, under the

New Rules, "specifically prohibits coverage and payment for incident to therapy

services provided by personnel who do not meet the qualification requirements

specified by the Secretary." Response to Rule 59(e) Motion at 7, n. 3. Thus, reason

the defendants, the "GY" modifier applies to "incident to" therapy services provided

by athletic trainers. Resolution of this dispute turns on the fact that the New Rules

preclude coverage of "incident to" therapy services when provided by persons other

than those deemed qualified by the Secretary. It would follow that, since the New

Rules have been implemented, "incident to" therapy services provide by athletic

trainers are excluded from coverage. Accordingly, the "GY" modifier appears on its

face to cover such services. Thus, even after the evidence submitted by NATA

regarding the CMS modifiers is considered, no manifest error of law or fact is

apparent in the court's July 21, 2005, memorandum opinion and order.

NATA's remaining argument, that the CMS Modifiers do not afford physicians

the ability to administratively appeal the denial of claims for "incident to" therapy

services provided by athletic trainers, is also unconvincing. In response, the

defendants offer the declaration of John F. Warren, Acting Director, Division of

Medical Review and Education, Program Integrity Group, Office of Financial

Management at the CMS.  Declaration of John F. Warren, Exhibit E to Appendix to Defendants' Response in Opposition to Plaintiff's Emergency Motion for Reconsideration, at 16-18.  Warren states, "based on my knowledge and experience, nothing in CMS's rules, regulations or guidance prohibits a physician or supplier from submitting a claim for services that are statutorily excluded or do not fall within a Medicare benefit category using the GY modifier, obtaining a denial of that claim from the Medicare carrier, and then appealing the denial of the claim." *Id*. at 17. While NATA argues that the defendants have not affirmatively pointed the court to any provision allowing such an appeal, Plaintiff's Reply in Support of Its Rule 59(e) Motion at 5, it is NATA's burden to show that the court's July 21, 2005, memorandum opinion and order was erroneous.  NATA has not directed the court to any Medicare regulation or provision which prohibits an administrative appeal in this instance.  *See* Rule 59(e) Motion at 6-7; Plaintiff's Reply in Support of its [Rule 59(e) Motion] at 5.  In fact, NATA's response to the defendants' motion to dismiss argued that physicians lacked the incentive to file an administrative appeal, not that physicians lacked the ability to do so.  *See* Plaintiff's Response to Defendants' Motion to Dismiss at 14-16.  Thus, NATA has failed to establish a manifest error of law or fact in the court's July 21, 2005, memorandum opinion which concluded that this court lacks jurisdiction over NATA's complaint.

- 12 -

### III.  CONCLUSION

For the reasons discussed above, NATA's motion to alter or amend the court's

July 21, 2005, memorandum opinion and order and final judgment is **DENIED**.

**SO ORDERED**.


August 25, 2005.


A. JOE FISH
CHIEF JUDGE